IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELISSA CHARNEY ET AL.,                    *

    Plaintiffs,                              *

                                *

v.                                         *

                                *       Civil No. 23-2955-BAH

PENNYMAC LOAN SERVICES, LLC,               *

    Defendant.                               *

                                *

*     *     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

Plaintiffs Melissa Charney ("Charney") and Daniel Jean ("Jean") sued Defendant PennyMac Loan Services, LLC, alleging federal and state claims relating to Defendant's loan servicing to Plaintiffs. ECF 1 (Notice of Removal). Pending before the Court is Defendant's Partial Motion to Dismiss Plaintiffs' Complaint (the "Motion"). ECF 7. Plaintiffs filed an opposition, ECF 8, and Defendant filed a reply, ECF 9. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

Plaintiffs allege that Defendant violated numerous state and federal laws when they failed to renew Plaintiffs' insurance with Travelers Insurance Company ("Assurant"), which left Plaintiffs uninsured when they suffered a house fire on March 1, 2022. ECF 2, at 4–5 ¶¶ 19–31. While subsequent to the fire Defendant instituted a retroactive forced place insurance policy with

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Assurant, this policy only covered loss to the structure of the property and excluded coverage for damage or loss to Plaintiffs' personal property or loss of use of the property. *Id.* ¶ 31.

## A.    Factual Allegations

Plaintiffs refinanced their mortgage loan on December 4, 2020, with North American Savings Bank ("NASB") in the amount of $475,000 (the "Loan"). ECF 2, at 2 ¶ 7. Plaintiffs executed a Deed of Trust in favor of NASB and the Deed was recorded. *Id.* ¶ 8. Pursuant to the terms of the Loan, Plaintiffs were required to pay monthly amounts of principal and interest, along with certain amounts to be held in escrow. *Id.* ¶ 9. Those amounts were designated for payment of the real property taxes and homeowner's insurance. *Id.* In December 2020, Plaintiffs had a homeowner's insurance policy with Assurant. *Id.* at 3 ¶ 11.

Then, on January 8, 2021, NASB sold the Loan to Defendant. *Id.* ¶ 15. Plaintiffs allege that one of the assumed obligations Defendant acquired in the Deed of Trust via purchase of the Loan was the obligation to pay the annual premium associated with the 2021–2022 Policy period from Plaintiffs' escrow fund. *Id.* at 4 ¶ 20. Plaintiffs allege Defendant failed to do so. *Id.*

On April 4, 2021, Plaintiffs received an email from Assurant informing them that their insurance policy expired on February 22, 2021. *Id.* ¶ 21. The email stated that the policy could be reinstated if payment was made before April 22, 2021. *Id.* Plaintiffs allege they "immediately contacted [Defendant] regarding the expiration of the Policy and inquired about the lack of payment by [Defendant] to [Assurant]." *Id.* ¶ 22. Defendant allegedly responded to Plaintiffs, "assuring Plaintiffs it would remit payment to [Assurant] to bring the Policy current." *Id.*

On May 22, 2021, Plaintiffs followed up with Defendant "to verify the status of the Policy and to verify [Defendant] remitted payment to [Assurant]." *Id.* ¶ 23. Defendant allegedly assured Plaintiffs that it had submitted a request to their Insurance Department for further investigation.

*Id.*  However, "[n]ot wanting to risk a lapse in coverage, Plaintiffs offered to pay [Assurant] directly, but [Defendant] declined to allow Plaintiffs to do so." *Id.*

Ultimately, Defendant "failed to make any payment to [Assurant] in satisfaction of the Policy premium originally due on February 22, 2021." *Id.* ¶ 24.  However, Plaintiffs allege Defendant issued an Escrow Account Disclosure Statement that "misrepresented that the [Insurance] Policy had been reinstated." *Id.* at 4–5 ¶ 26.

On March 1, 2022, a fire broke out at Plaintiffs' property. *Id.* at 5 ¶ 27.  The fire resulted in "significant structural damage and extensive loss to personal property." *Id.* ¶ 27.  Plaintiffs contacted Assurant to process the claim and were told that the policy was cancelled. *Id.* at ¶ 29. Following the fire, Defendant instituted a retroactive forced place insurance policy with Assurant that only covered loss to the structure of the Property, but not damages or loss to Plaintiffs' personal property or the loss of use of the Property. *Id.* ¶ 31.  As such, Plaintiffs' family of eight (8), including five (5) children and pets, had no coverage to assist in replacing personal items or to assist in securing temporary housing for their family. *Id.* ¶ 30.  Plaintiffs assert they incurred significant costs for temporary housing and were forced to miss time from their places of employment due to Defendant's failure. *Id.* ¶¶ 34–35.

### B.   Procedural History

Plaintiffs initiated this suit in the Circuit Court for Howard County on or about November 4, 2022, and the original suit alleged claims based only in state law. *See* ECF 1-3, at 8–9 (alleging breach of contract and negligence).  After some amount of written discovery and an unsuccessful mediation, ECF 8-1, at 2, on October 10, 2023, Plaintiffs filed an Amended Complaint adding a claim for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, ECF 1-1, at 10.  Defendant timely removed the action pursuant to 28 U.S.C. § 1331, as Plaintiffs' added

claim involves a question of federal law. ECF 1, at 2 ¶¶ 4–6; *see also id.* ¶ 7 (noting that Plaintiffs' state law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367). The motion is ripe and ready for disposition.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v.*

4

*Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

## III.   ANALYSIS

Plaintiffs' Amended Complaint asserts a breach of contract claim (Count I), a negligence claim (Count II), and a Real Estate Settlement Procedures Act ("RESPA" or the "Act") claim (Count III). ECF 2, at 7–9. Defendant moves to dismiss only Counts II and III. ECF 7-1, at 1.

### A.   Plaintiffs' Negligence Claim is Barred by the Economic Loss Doctrine.

Defendant alleges that Plaintiffs' negligence claim must fail under the economic loss doctrine, ECF 7-1, at 4, and that Plaintiffs have failed to adequately plead that Defendant owed Plaintiffs a duty in tort, *id.* at 5.[2] Plaintiffs counter that the economic loss doctrine does not apply in the present case and that Plaintiffs have sufficiently pled that Defendant owed Plaintiffs a tort duty. ECF 8-1, at 1. Having reviewed the parties' arguments, I find that Plaintiffs' negligence claim is barred by the economic loss doctrine, and as such, I need not reach the question of whether Defendant owes Plaintiffs a duty in tort.

Defendant argues that under Maryland law a plaintiff is prohibited "from recovering tort damages for what in fact is a breach of contract." ECF 7-1, at 4 (quoting *Cash & Carry Am., Inc.*

---

[2] "As a federal court exercising supplemental jurisdiction, the Court applies the choice of law rules of the forum state." *East W., LLC v. Rahman*, 873 F. Supp. 2d 721, 727 (E.D. Va. 2012) (citing *Klaxon Co. v. Stentor Elec. Manuf. Co.*, 313 U.S. 487, 495 (1941)). For tort claims, Maryland generally adheres to the *lex loci delicti commissi*, or place of harm, principle to determine the applicable state's substantive law. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) (citing *Hauch v. Connor*, 453 A.2d 1207, 1208 (Md. 1983)). "Courts applying Maryland's choice of law rules only use Maryland law to evaluate substantive law claims as a default when both parties only cite Maryland law in their briefing." *Bank of La. v. Marriott Int'l, Inc.*, 438 F. Supp. 3d 433, 443 (D. Md. 2020) (citation omitted). Here, both parties only cite Maryland law in their briefing on Plaintiffs' negligence claim. *See* ECF 7-1, at 4–5 (citing decisions from Maryland state courts and decisions from the Court applying Maryland law); ECF 8-1, at 5–6 (citing decisions from only Maryland state courts in briefing Plaintiffs' negligence claim). Therefore, I will apply Maryland law in evaluating Plaintiffs' negligence claim.

*v. Roof Sols., Inc.*, 117 A.3d 52, 60 (Md. App. 2015)).  Plaintiffs counter that "the economic loss doctrine does not apply in the present case because of Defendant['s] . . . status as a banking institution."  ECF 8-1, at 1; *see also* ECF 8-1, at 5–6 (focusing argument on the relationship between a mortgagee and mortgagor).

"The economic loss doctrine, which developed in product liability cases, prohibits a plaintiff from recovering tort damages for what in fact is a breach of contract.  So, a plaintiff in a product liability action alleging that a product is defective cannot recover tort damages for 'the loss of value or use of the product itself, and the cost to repair or replace the product.'"  *Cash & Carry*, 117 A.3d at 60 (quoting *United States Gypsum v. Mayor and City Council of Balt.*, 647 A.2d 405 (Md. 1994)); *Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731, 737 (D. Md. 2008) ("Under the economic loss doctrine, plaintiffs are generally precluded from bringing negligence actions to recover purely economic losses.").

This doctrine is not absolute.  Maryland recognizes an exception where a defective product creates a "substantial and unreasonable risk of death or personal injury."  *United States Gypsum*, 647 A.2d at 410 (permitting claims for the cost of asbestos removal to proceed in tort on this basis); *see Council of Co-Owners v. Whiting-Turner*, 517 A.2d 336, 345–48 (Md. 1986) (permitting negligence action to recover costs of correcting a dangerous condition in a condominium, which was built without the proper fire-resistant materials); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 266 (Md. 2007) (noting Maryland's adoption of this exception in *Whiting-Turner*).  Thus, when the negligent action alleged is merely the negligent breach of a contract and the negligent action did not create a "substantial and unreasonable risk of death or personal injury," the economic loss doctrine will bar suits in tort.

6

When a negligent action alleged is independent from the breach of contract, courts are more likely to find the economic loss doctrine does not apply. *See Cash & Carry Am., Inc. v. Roof Sols., Inc.*, 117 A.3d 52, 60 (Md. App. 2015) (holding the economic loss doctrine did not preclude a corporation's negligence action against a roofing contractor and subcontractor when the corporation's personal property was damaged in a fire caused by a subcontractor's negligent use of a torch while replacing a roof); *Pac. Indem. Co. v. Whaley*, 560 F. Supp. 2d 425, 430 n.5 (D. Md. 2008) (holding economic loss doctrine did not apply where water damage to a home that occurred during a roof renovation was caused not because of a defective roof but because the contractors failed to cover the unfinished roof with a secure tarp).

For instance, in *Cash & Carry America, Inc. v. Roof Solutions, Inc.*, the Appellate Court noted that the economic loss doctrine did not bar a negligence claim where a contractor's use of a torch while constructing a roof caused a fire that damaged the property, as the negligence claim stemmed from the contractor's use of a torch—not any deficiency in the contracted-for-roof. 117 A.3d at 60–61. By way of example, the Appellate Court noted the economic loss doctrine would be relevant "if, for example, the new roof . . . was defective in a way that posed no risk to human safety, and [the plaintiff] sued [the defendants] in tort to recover damages for the cost to repair the defect. That claim would sound in contract, and tort recovery would not be permitted." *Id.* at 61. This latter situation hypothesized by the Appellate Court is comparable to what is at issue here.

Contrary to *Cash & Carry*, where there was an independent negligent action (*i.e.*, the lighting of torch) that was disconnected from the underlying contractual obligation (*i.e.*, to construct a roof), in this case, there is no independent negligent act or omission disconnected from the alleged negligent breach of a contract. The negligent act Plaintiffs allege was Defendant not

making payment to Assurant in violation of the terms of their contract. ECF 2, at 8 ¶¶ 46–47. Thus, this is clearly a claim of negligent breach of contract.

While such a claim may be permissible under exceptional circumstances, there is no basis to assert that Defendant's failure to remit payment for Plaintiffs' insurance renewal led to a "substantial and unreasonable risk of death or personal injury." *United States Gypsum*, 647 A.2d at 410. While no one doubts that a fire is a dangerous condition, failing to renew insurance does not make a fire more likely to happen. ECF 7-1, at 4 (arguing that Plaintiffs do not allege the fire was a result of Defendant's negligence); *see also Morris v. Osmose*, 667 A.2d 624, 633 (Md. 1995) (holding negligence claim was barred by economic loss doctrine where plaintiffs argued a roof's material created a dangerous condition, but the allegations of danger amounted to mere possibilities and did not establish a clear danger). Rather, this is a straightforward breach of contract case, where Plaintiffs allege Defendant failed to comply with its contractual obligation and that that failure caused Plaintiffs to suffer monetary losses it would not have suffered had Defendant complied with its obligations. *See also Jacques First Nat'l Bank of Md.*, 515 A.2d 756, 765 (Md. 1986) (noting that suing in tort and suing for a breach of contract is similar in terms of the proof required and the measure of compensatory damages allowed).

Plaintiffs' reliance on *Jacques v. First National Bank of Maryland* to avoid the preclusive effect of the economic loss doctrine is unavailing. *See* ECF 8-1, at 6 (citing *Jacques*, 515 A.2d 756–65). In *Jacques*, purchasers of a home sued a bank to which they had applied for a residential mortgage loan, alleging negligent handling of the purchasers' loan application. *Id.* at 756–58. The Supreme Court of Maryland upheld the jury award in favor of the purchaser's negligence claim. *Id.* at 758. However, *Jacques* was not an economic loss doctrine case; *Jacques* dealt with when and in what circumstances a duty in tort arises between a bank and mortgage loan applicant. *See*

*Cash & Carry*, 117 A.3d at 60 ("[T]he holding in *Jacques* and the 'economic loss doctrine' are not

one and the same."). In *Jacques*, there was no breach of contract claim between the parties. *See*

*id.* at 529 (noting the complaint included five counts including malicious interference with the

right of contract, breach of fidelity, negligence, gross negligence, and "prima facie" tort). As such,

the *Jacques* Court did not address whether a negligence action may be maintained in tandem with

a breach of contract claim. *Id.*; *see also 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60

A.3d 1, 12 (Md. 2013) (recognizing title companies have a tort duty where plaintiffs brought only

negligence claims and did not sue under any breach of contract claims).

     Neither of the cases Plaintiffs cite support maintaining a dual breach of contract and

negligence action. *See* ECF 8-1, at 5–6 (citing only *Balfour Beatty Infrastructure, Inc. v. Rummel*

*Klepper & Kahl, LLP*, 155 A.3d 445 (2017) and *Jacques*, 515 A.2d 762–65). Similar to *Jacques*,

*Balfour Beatty Infrastructure Inc.* is also a case in which the plaintiffs alleged only negligence

claims, not breach of contract claims. 155 A.3d at 448.

     Ultimately, the purpose of the economic loss doctrine is to enforce the boundary between

tort and contract, with the former focused on protecting people and property from foreseeable risks

of harm and the latter focused on enforcing the expectations of the parties to an agreement. *Cash*

*& Carry*, 117 A.3d at 61. Maryland law provides a plaintiff a choice of remedies, *Jacques*, 515

A.2d at 765, and Plaintiffs have elected to proceed on both—an election that Maryland's economic

loss doctrine does not allow. Defendant's Motion to Dismiss Count II of Plaintiffs' Amended

Complaint is **GRANTED**.

     **B.**    **Plaintiffs Sufficiently Allege a RESPA Violation.**

     RESPA is a consumer-protection statute that imposes short timeframes for mortgage

servicers to respond to inquiries from mortgagors. 12 U.S.C. § 2605(e)(A); *see also Roth v.*

*CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (citing *Freeman v. Quicken Loans, Inc.*, 556

U.S. 624, 626 (2012)).  Plaintiffs allege that Defendant violated RESPA's requirement to respond in writing to an inquiry within five days. ECF 2, at 11 ¶ 58; *see* 12 U.S.C. § 2605(e)(A) (imposing five-day requirement).  Defendant argues Plaintiffs' RESPA claim should be dismissed because: (1) Plaintiffs' inquiry did not constitute a Qualified Written Request ("QWR") that triggers RESPA's obligations, ECF 7-1, at 7; and (2) Plaintiffs Amended Complaint fails to allege with sufficient specificity the content of the inquiry, such that a court could determine whether the inquiry constituted a QWR, *id.* at 8.

      1.    Defendant's argument that the inquiry was sent to the wrong address is unpersuasive at this procedural posture.

A QWR is defined in § 2605(e)(1)(B) as:

[A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
    (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
    (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Plaintiffs allege they submitted a QWR on May 25, 2021, to Defendant concerning Defendant's payment to Assurant. ECF 2, at 10 ¶ 54. Defendant counters that this communication is not a QWR because it was sent to the wrong address. ECF 8-1, at 7.

"RESPA's implementing regulations allow (but do not require) servicers to establish a designated address for QWRs." *Lupo v. Jpmorgan Chase Bank, N.A.*, Civ. No. DKC 14-0475, 2016 WL 3459855, at *5 (D. Md. June 24, 2016) (quoting *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014)); *see also* 24 C.F.R. § 3500.21(e)(1). "The final rulemaking notice for the operative regulation, Regulation X, explained that if a servicer establishes a designated QWR

10

address, then the borrower must deliver its request to that office in order for the inquiry to be a [QWR]." *Roth*, 756 F.3d at 181 (internal citation and quotation marks omitted).

The Second and Tenth Circuits have held that a communication will not constitute a QWR if the loan servicer designates an address for QWRs, puts mortgagors on notice of the address, and then received communications at an improper address. *See Roth*, 756 F.3d at 181; *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1147 (10th Cir. 2013) ("Failure to send the QWR to the designated address for the receipt and handling of [QWRs] does not trigger the servicer's duties under RESPA." (alteration in original) (internal quotation marks and citation omitted)).

Numerous jurists in this District have found these cases persuasive. *See Bird v. Bank of New York Mellon Tr. Co., N.A.*, Civ. No. GLR-19-464, 2019 WL 4750289, at *7 (D. Md. Sept. 30, 2019); *Lupo v. Jpmorgan Chase Bank, N.A.*, Civ. No. DKC 14-0475, 2016 WL 3459855, at *5 (D. Md. June 24, 2016); *Nash v. PNC Bank, N.A.*, Civ. No. TDC-16-2910, 2017 WL 1424317, at *7 (D. Md. Apr. 20, 2017). As a matter of law, I agree with Defendant, the jurists in this District that have addressed the issue, and the Second and Tenth Circuit opinions that when a loan servicer elects to receive QWRs through a particular address and notifies its mortgagors of that address, communications received outside of that address are not QWRs.

However, as a matter of procedure, the only allegation that Defendant has elected to receive QWRs at a particular address and has notified its customers to that effect comes from Defendant's brief. *See* ECF 7-1, at 7. At the motion to dismiss stage, this factual allegation is beyond the scope of my review. *See, e.g., Blades of Green, Inc. v. Go Green Lawn & Pest, LLC.*, 598 F. Supp. 3d 348, 354 (D. Md. 2022) ("Courts generally do not 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defense' through a Rule 12(b)(6) motion." (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999))); *Goodman v. Praxair, Inc.*, 494

11

F.3d 458, 464 (4th Cir. 2007) (en banc) (noting courts may resolve an affirmative defense only if it clearly appears "*on the face of the complaint*" (emphasis in original)); *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

Further, the cases to which Defendant cites are distinguishable because in those cases, where the RESPA claim was dismissed at the motion to dismiss stage, the courts had before them exhibits supporting the loan servicers' designation of a QWR address. In *Roth*, the Second Circuit upheld a district court's dismissal of a RESPA claim under Rule 12(b)(6) where the Plaintiff had attached a mortgage statement to her Complaint that included notice of a designated QWR. 756 F.3d at 183. Similarly, in *Berneike*, the Tenth Circuit affirmed a district court's dismissal of a RESPA claim under Rule 12(b)(6) when monthly mortgage statements were properly before the court that included notice of a designated QWR address. 708 F.3d at 1146; *but see id.* (noting it was improper for the district court to consider a "welcome letter" that notified mortgagors of the designated address for QWRs).

Here, Defendant attaches an exhibit of the alleged QWR communication from Plaintiff Jean. *See* ECF 7-3, at 2–3; ECF 7-1, at 7 n.2 (arguing the Court may consider the exhibit as integral to Plaintiffs' Amended Complaint). However, even considering that exhibit, contrary to the mortgage statements in *Roth* and *Berneike*, this attachment does not establish that Defendant designated an address or that Plaintiffs were notified of the QWR address. *See* ECF 7-3, at 2–3. While Defendant asserts in its brief that "Plaintiffs communicated with [Defendant] through a secure messaging system rather than the designated address for QWRs[,]" ECF 7-1, at 7, at this stage such a factual allegation asserted in argument is not reviewable. *Blades of Green, Inc.*, 598 F. Supp. 3d at 354; *Goodman*, 494 F.3d at 464; *Forst*, 4 F.3d at 250.

12

Nor is it Plaintiffs' responsibility to allege that they sent a QWR to the properly designated address in order to plead a claim of a RESPA violation because loan servicers are not required under the Act to designate an address for receiving QWRs. *See Herrmann v. Wells Fargo Bank, N.A.*, 529 F. Supp. 3d 549, 560 (W.D. Va. 2021) (noting such an election is optional under 12 C.F.R. § 1024.36(b)); *Lupo*, 2016 WL 3459855, at *5 (citing *Roth*, 756 F.3d at 181 (2d Cir. 2014)). Because Defendant's assertion of fact is not credited in considering a motion to dismiss and given the absence of factual allegations on Defendant's election and notification in either the Amended Complaint or in any attached document, the Court will assume for purposes of this motion the that Plaintiffs' inquiry was sent to a permissible address.

## 2.    Plaintiffs have sufficiently alleged they submitted a QWR.

"To state a claim under RESPA's QWR provisions, a plaintiff must allege: (1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (quoting *Thomas v. Ocwen Loan Servicing, LLC*, Civ. No. ELH-17-218, 2017 WL 2645721, at *6 (D. Md. 2017)). The parties dispute only the first element, namely whether Plaintiffs written inquiry was sufficient to constitute a QWR. *See* ECF 7-1, at 6; ECF 8-1, at 7.

To survive a motion to dismiss, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 564 (E.D.N.C. 2012) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). A court "need not accept

the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp.*, 213 F.3d 175, 180 (4th Cir. 2000).

To begin, Defendant's reliance on *Ward v. Security Atlantic Mortgage Electronic Registration Systems, Inc.*, 858 F. Supp. 2d 561, 564 (E.D.N.C. 2012) is misplaced. ECF 7-1, at 6. In *Ward*, a pro se plaintiff attached an exhibit to his amended complaint to support an alleged violation of RESPA by failing to promptly respond to a QWR. *Id.* at 574. The Court analyzed the substance of the communication and concluded that, in substance, the communication was not a QWR because the plaintiff only requested "copies of loan documents, assignments of the deed of trust and promissory note and copies of property inspection reports and appraisals and a loan transactional history," to contest the validity of the loan, which were not the types of communications contemplated by the Act. *Id.* at 574–75 (noting plaintiff's communication "served as a communication challenging the validity of the loan and not a communication relating to the servicing of the loan as defined by *statute*" (emphasis in original)); *see also Junod v. Dream House Mortg. Co.*, Civ. No. 11-7035, 2012 WL 94355, at *3–4 (C.D. Cal. Jan. 5, 2012) (explaining copies of the promissory note and deed of trust and "a complete life of loan transactional history" are "not the type of information RESPA contemplates"); *Marsh v. BAC Home Loans Servicing*, Civ. No. 09-813, 2011 WL 1196415 at *8 (M.D. Fla. March 29, 2011) (finding notice sent by plaintiff did not qualify as a valid QWR because "[n]othing in the notice indicates that there was a problem with the servicing of the loan (e.g., the way BAC received plaintiffs' scheduled periodic payments due under the loan)"); *Hintz v. JPMorgan Chase Bank, N.A.*, Civ. No. 10-2825, 2011 WL 579339 at *8 (D. Minn. Feb. 8, 2011) (holding "the letters were not QWRs because [p]laintiffs did not identify purported errors in their account or ask questions related to Chase's servicing of

14

their loan," and because "[p]laintiffs' letters had no relation to Chase's receipt or application of their payments"). Thus, unlike in *Ward*, where the mortgagor contacted the loan servicer seeking documentation to contest the *validity* of the loan, Plaintiffs here allege they contacted their loan servicer regarding a belief that the loan servicer was not administering an escrow account as part of the "*servicing* of the loan." *See* ECF 2, at 10 ¶ 54–11 ¶ 59 (emphasis added).

None of the cases to which Defendant cites suggest that administering an escrow account is not a part of the "servicing of the loan." In fact, "Servicing" is defined under 12 U.S.C. § 2605 (i)(3) as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, *including amounts for escrow accounts* described in section 2609 of this title, *and making the payments* of principal and interest and such other payments with respect to the amounts received from the borrower *as may be required pursuant to the terms of the loan.*

(emphasis added); *see also* ECF 8-1, at 8 (citing the same) (emphasis added).

Defendant also cites *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 293 (N.D.N.Y. 2008) to support the argument that "[a]n email does not constitute a QWR as electronic requests undermine the efficiency sought to be achieved by RESPA and violate the express requirement that QWR's be made in writing." ECF 7-1, at 7. However, the issue in *Gorham-DiMaggio* was not that the request was made via electronic means but rather that the "request was made electronically to a third party, only then to hopefully be passed on to the lender by unknown means." 592 F. Supp. 2d at 293. Contrary to *Gorham-DiMaggio*, there is no allegation in this case that Plaintiffs contacted a third party. *See* ECF 2, at 10 ¶ 54 ("Plaintiff Daniel Jean sent a qualified written request to [Defendant] concerning [Defendant's] payment of the [insurance] premium.").

Finally, Defendant argues that the communication sent by Plaintiffs did not constitute a QWR because the Amended Complaint did not specify the substance of the request, and that Plaintiffs' request did not "provide Plaintiffs' account information or details to help identify the account." ECF 7-1, at 8 (citing ECF 7-3, at 2–3). Plaintiffs counter that no "magic language" is required to transform an inquiry into a QWR, ECF 8-1, at 10 (quoting *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018); rather, the ultimate role of the Court at this stage is to determine if the correspondence "relate[s] to servicing." *Barr*, 303 F. Supp. 3d at 417.

Plaintiffs analogize this case to *Martins v. Wells Fargo Bank, N.A.*, Civ. No. CCB-16-1070, 2016 WL 7104813, at *4 (D. Md. Dec. 6, 2016). In *Martins*, a mortgagor did not receive a letter allegedly sent by her loan servicer notifying her of an increased mortgage payment to account for delinquent taxes. *Id.* at *1. After failing to make the increased payments and later learning from the loan servicer that she was allegedly delinquent on her taxes, the plaintiff sent what she alleged was a QWR seeking numerous types of information from the loan servicer. *Id.* The loan servicer argued that the letter was not a QWR because it sought to dispute the validity of the debt and the letter did not contain sufficient detail regarding the reason the plaintiff believed the debt balance was incorrect. *Id.* at *2.

The *Martins* Court noted that RESPA is a consumer protection statute, "and should be liberally construed to most effectively advance Congress's intent." *Id.* at *4 (citing *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010) (per curiam); *see also Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 985–86 n. 5 (6th Cir. 2009) (stating that because RESPA is a "remedial statute[ ]," it "should be construed broadly to extend coverage and [its] exclusions or exceptions should be construed narrowly"). As such, the *Martins* Court noted that "to the extent

16

possible, courts should allow borrowers some flexibility with respect to their requests for information, and perfect compliance is not necessarily required." 2016 WL 7104813, at *4.

Thus, while the communication in *Martins* contained a number of requests, including that the plaintiff disputed the amount of debt the loan servicer claimed it was owed, the *Martins* Court nevertheless focused on "a number of requests that are aimed at gathering information regarding the servicing of her mortgage loan." *Id.* at *4 ("For example, [the plaintiff's] requests . . . refer[] specifically to the application of payments to principal and interest, escrow deposits, and escrow balance. . . . Thus, a significant part of [the plaintiff's] August 17th correspondence relates directly to the servicing of [the plaintiff's] mortgage loan as defined by RESPA.").

Plaintiffs' request here is even more straightforward than the request in *Martins* as there is nothing in the communication in this case that can be construed as disputing the validity of the debt. Plaintiffs' communication was clearly designed to investigate whether Defendant was performing its loan servicing obligation of remitting payment from an escrow account. ECF 7-3, at 2.[3] Plaintiffs' communication indicated that they had received a notice of a missing payment from Assurant and notification of their policy's expiration. *Id.* Plaintiffs requested the loan servicer "check to see what went wrong," sought verification as to whether "payment [was] made from escrow in February," and asked whether "payment [should] be made from escrow now, or from [Plaintiff Jean][.]" *Id.* Further, the May 25th communication was in response to a May 24th

---

[3] While Defendant may be correct that Plaintiffs' Amended Complaint alone may merely present a formulaic recitation of the elements, Defendant attached the communication itself at ECF 7-3, and the Court agrees with Defendant's argument that consideration of that attachment is proper without converting the Motion into a motion for summary judgment. *See* ECF 7-1, at 7 n.2 (noting courts "may properly consider documents attached to a . . . motion to dismiss 'so long as they are integral to the complaint and authentic.'" (quoting *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014))). Additionally, Plaintiffs have identified and incorporated the communication into the complaint. *See* ECF 2, at 10 ¶ 54; ECF 8-1, at 7 n.2.

communication from an agent of Defendant, indicating that the Defendant knew Plaintiffs' policy number. *Id.* Thus, I agree with Plaintiffs that "as evidenced by [Defendant's] response to Plaintiffs, the information provided by Plaintiff Daniel Jean clearly allowed the [agent of Defendant] to find the details of the loan and the relevant servicing issues." ECF 8-1, at 10 (citing ECF 7-3).

In sum, I agree that Plaintiffs have alleged they submitted a QWR sufficient to survive a motion to dismiss. Accordingly, Defendant's Motion is **DENIED** as to Count III.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiffs' Count II is **DISMISSED** without prejudice. Plaintiffs' Count III remains. A separate implementing Order will issue.

Dated: <u>May 23, 2024</u>                                         <u>        /s/                  </u>
                                                                              Brendan A. Hurson
                                                                              United States District Judge