IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MELISSA CHARNY ET AL., | * |
| Plaintiffs, | * |
| v. | * |
|  | *   Civil No. 23-2955-BAH |
| PENNYMAC LOAN SERVICES, LLC, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Melissa Charny ("Charny") and Daniel Jean ("Jean") sued Defendant PennyMac Loan Services, LLC, alleging federal and state claims relating to Defendant's loan servicing to Plaintiffs. ECF 1 (Notice of Removal). Pending before the Court is Defendant's Partial Motion for Summary Judgment (the "Motion"). ECF 22. Plaintiffs filed an opposition, ECF 26, and Defendant filed a reply, ECF 27. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's Motion is GRANTED.

I. **BACKGROUND**

This case arises out of Plaintiffs' allegations that Defendant failed to renew Plaintiffs' homeowners' insurance in violation of state and federal law.[2] *See* ECF 2, at 4–5 ¶¶ 19–31. On

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] The Court has detailed the nature of the factual allegations in an earlier opinion addressing Defendant's partial motion to dismiss and does not recount them verbatim here. *See Charney v. PennyMac Loan Servs., LLC*, Civ. No. 23-2955-BAH, 2024 WL 2391140, at *1–2 (D. Md. May 23, 2024). The prior opinion misstated Plaintiff Charny's surname as "Charney." The Court

May 23, 2024, this Court granted in part and denied in part Defendant's motion to dismiss Plaintiffs' claims, dismissing their negligence claim (Count II of Plaintiffs' amended complaint) but allowing their claim under the Real Estate Settlement Procedures Act ("RESPA") to proceed (Count III). *See Charney*, 2024 WL 2391140, at *9. Defendant now moves for summary judgment solely on Plaintiffs' RESPA claim. ECF 22, at 2 ¶ 2. Count I of Plaintiffs' amended complaint alleging a breach of contract is not at issue in the instant motion.

To summarize the arguments relevant to the pending motion for partial summary judgment, Plaintiffs allege that Defendant violated RESPA when it failed to act to address Plaintiffs' request for information regarding whether Defendant had renewed Plaintiffs' homeowners' insurance policy. ECF 2, at 10 ¶ 54. Plaintiffs argue that Defendant's failure to meaningfully respond to two communications, a May 25, 2021 electronic message communication sent by Plaintiff Daniel Jean and a follow-up electronic inquiry by Plaintiff Jean sent on June 4, 2021, *see* ECF 22-10, at 1–2, violated 12 U.S.C. § 2605(e), the provision of RESPA which governs a mortgage servicers' responsibility to respond to inquiries from mortgagers. ECF 2, at 11 ¶ 58. Defendant argues in response that it is entitled to summary judgment on the RESPA claim because Plaintiffs failed to direct their communication to the address designated for receiving such correspondence and therefore Defendant's obligations under RESPA were not triggered. ECF 22-1, at 9.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether

---

apologizes for this error but for clarity will continue to reference that opinion by using the incorrect caption.

2

it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 603 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir.

2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III.   ANALYSIS

RESPA is a consumer-protection statute that imposes, among other provisions, short timeframes for mortgage servicers to respond to inquiries from mortgagors. 12 U.S.C. § 2605(e)(1); *see also Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (citing *Freeman v. Quicken Loans, Inc.*, 556 U.S. 624, 626 (2012)). Section 2605(e)(1)(A) provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such a loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days[.]" A "qualified written request," frequently referenced in relevant caselaw as a "QWR," is defined as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that–
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

"RESPA's implementing regulations allow (but do not require) servicers to establish a designated address for QWRs." *Lupo v. JpMorgan Chase Bank, N.A.*, Civ. No. DKC 14-0475, 2016 WL 3459855, at *5 (D. Md. June 24, 2016) (quoting *Roth*, 756 F.3d at 181). "The final rulemaking notice for the operative regulation, Regulation X, explained that if a servicer

4

establishes a designated QWR address, then the borrower must deliver its request to that office in order for the inquiry to be a [QWR]." *Roth*, 756 F.3d at 181 (internal citation and quotation marks omitted). This Court previously concluded that "when a loan servicer elects to receive QWRs through a particular address and notifies its mortgagors of that address, communications received outside of that address are not QWRs." *Charney*, 2024 WL 2391140, at *6. Regulation X, now found at 24 C.F.R. §§ 1024 *et seq.*,[3] provides that if a mortgage servicer designates one address for "notices of error," it "shall designate the same address for receiving information requests pursuant to § 1024.36(b)," and vice versa. 12 C.F.R. §§ 1024.35(c); 1024.36(b).

Defendant argues that Plaintiffs' inquiry regarding the status of their homeowners' insurance does not qualify as a QWR because it was sent through an online messaging system, not to the address designated for receipt of QWRs. ECF 22-1, at 9. To support this contention, Defendant points to several instances where it put Plaintiffs on notice of its designated QWR address. On January 11, 2021, for example, Defendant sent Plaintiffs a letter informing them of the transfer of their mortgage with the proviso that "[n]otices of error or information requests must be mailed" to a specific Post Office ("P.O.") Box in Los Angeles, California. ECF 22-4, at 3. A subsequent mortgage statement, dated January 16, 2021, reiterated the same directive in a

---

[3] "Under the Dodd-Frank Act, responsibility for the administration, enforcement, and implementation of RESPA was transferred from the Department of Housing and Urban Development ('HUD') to the [Consumer Financial Protection Bureau ("CFPB")]." *McCray v. Bank of Am., Corp.*, Civ. No. ELH-14-2446, 2017 WL 1315509, at *14 (D. Md. Apr. 10, 2017) (citing 79 F.R. 34224-01 (June 16, 2014)). "The CFPB 'substantially duplicate[d]' HUD's regulations, reenacting them at 12 C.F.R part 1024." *Id.* (citing 76 F.R. 78978-01 (Dec. 20, 2011)). "The Mortgage Servicing Rules, otherwise known as Regulation X, were 'repromulgated by the CFPB in 2013 and became effective on January 10, 2014.'" *Richards v. New Rez, LLC*, Civ. No. ELH-20-1282, 2022 WL 657568, at *13 (D. Md. Mar. 4, 2022) (quoting *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 261 (S.D.N.Y. 2017) and Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act), 78 Fed. Reg. 10696–899 (February 14, 2013), codified as 12 C.F.R. §§ 1024 et seq. (hereinafter, "Regulation X")).

5

subsection entitled "How to Contact Us" by stating that "[n]otices of error or information requests **must** be mailed to this [Los Angles P.O. Box] address." ECF 22-5, at 3 (emphasis in original). The same bolded requirement that notices of error or information requests must be sent to a specific P.O. Box appeared in another mortgage statement dated February 10, 2021. ECF 22-6, at 3. Subsequently, in a letter dated March 10, 2021, Defendant informed Plaintiffs that it was changing its mailing address "for Notice of Error and Information Requests," effective April 1, 2021. ECF 22-7, at 1. This notice reflected that "[t]o submit a Notice of Error or Information Request, [the recipient] must use the following address," and reflected a new P.O. Box in Forth Worth, Texas. *Id.* The new address for the Texas P.O. Box appeared in further mortgage statements sent to Plaintiffs in the spring of 2021. *See* ECF 22-8, at 3; ECF 22-9, at 3. These letters also included the admonition that "[n]otices of error or information requests **must** be mailed to this [Fort Worth P.O. Box] address." *Id.* (emphasis in original).

Plaintiffs do not dispute the authenticity of these communications but instead allege that the format of the mortgage statement, specifically the "How to Contact Us" subsection, is "unclear." ECF 26-2, at 6–7. They first argue that Defendant did not clearly indicate that "QWRs" must be sent to the designated P.O. Box address but instead stated only that "[n]otices of error or information requests" should be mailed there. ECF 26-2, at 6. In addition, Plaintiffs argue that the positioning of the designated QWR P.O. Box address adjacent to contact information for both Defendant's customer service hotline and its online chat service, the service utilized by Plaintiffs to communicate with Defendant, alongside an encouragement to "Go Paperless today!," reasonably led Plaintiffs "to believe that written communication sent to either [the physical mailing or the online chat] address would be treated as a QWR." *Id.* at 7. In support of this second argument, Plaintiffs point out that Defendant did, in fact, notice and respond to their

6

communication through the online chat function. *Id.* ("More importantly, it is undisputed that PennyMac received the QWR from Plaintiffs and responded to Plaintiffs"). Finally, in their response to the Motion, Plaintiffs argue that summary judgment is premature because depositions have not yet taken place, and Plaintiffs anticipate that depositions of Defendant's corporate representatives may indicate that Plaintiff's communication was, in fact, forwarded to or received at the designated address for QWRs. *Id.* at 8.

### A. Defendant properly designated an address for the receipt of Plaintiffs' QWR

Plaintiffs essentially argue that because the notice sent by Defendant did not specifically use the term "QWR," but instead referenced "notices of error" and "requests for information," Plaintiffs cannot be faulted for believing that the use of an internet chat function to raise their concerns regarding their loan servicing "would be treated as QWR." ECF 26-2, at 7. Viewing all evidence in the light most favorable to the nonmoving party, the Court agrees with Plaintiffs' argument that "none of [Defendant's] communications to Plaintiffs specifically identified the proper mailing address for a QWR under RESPA[.]" ECF 26-2, at 9. However, this position ignores the plain fact that Plaintiffs' communication was unquestionably a specific *type* of QWR specifically described in RESPA's implementing regulations. And Defendant was clear in its correspondence as to the address where this type of QWR must be directed. Since there is no debate that Plaintiffs failed to send their correspondence to that address, summary judgment must be granted as to their RESPA claim.

Plaintiffs are correct that RESPA's implementing regulation, Regulation X, requires that mortgage servicers make their disclosures, including notices of designated addresses for receipt of QWRs, in a "clear and conspicuous" manner. 12 C.F.R. § 1024.32(a)(1). The Court again notes that it is undisputed that the mailings from Defendant that are at issue here never specifically used

7

the term QWR. *See* ECFs 22-4 through 22-9. Defendant minimizes the significance of this omission by assuming that there is no distinction between the terms used in the mailings and the term QWR. *See* ECF 22-1, at 7 (noting that a "Welcome Letter" sent to Plaintiffs when their mortgage loan was transferred to PennyMac, included "its designated Qualified Written Request address" when the actual letter actually used the terms "Notice of Error" and "Request for Information"). Defendant's grouping of the terms is understandable, for as Judge Grimm noted, "there appears to be some confusion among federal courts applying RESPA as to whether a NOEs ['Notice of Error'] and RFIs ['Requests for Information'] are subsets of QWRs, or whether they are three different categories of communication, each requiring a different kind of response." *Garey v. BWW L. Grp., LLC*, No. 8:19-CV-03112-PWG, 2021 WL 4521329, at *13 (D. Md. Oct. 4, 2021). But as Judge Grimm acknowledged, the Consumer Financial Protection Bureau ("CFPB"), which now administers regulations related to RESPA, promulgated an official interpretation of the pertinent regulations that "supports the latter view and explains that there is overlap between the three," but noting that they are, in fact, different terms. *Id.* Specifically, the CFPB noted that "[a] qualified written request is just one form that a written notice of error or information request may take. Thus, the error resolution and information request requirements in [12 C.F.R.] §§ 1024.35 and 1024.36 apply as set forth in those sections irrespective of whether the servicer receives a qualified written request." *Id.* (citing 12 C.F.R. § 1024, Supp. I (official CFPB interpretations)). As such, "[w]hile there is significant overlap between QWRs and notices of errors and requests for information, the terms are not synonymous." *Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1007 (N.D. Ill. 2016).

Other courts seem to agree that QWRs can take many forms but acknowledge that "NOEs and RFIs are both types of QWRs," and thus "see no harm with referring to them all as QWR[]s."

*Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 669 n.3 (10th Cir. 2018); *see also Best v. Ocwen Loan Servicing, LLC*, No. 15-cv-13007, 2016 WL 125875, at *3 (E.D. Mich. Jan. 12, 2016), aff'd, No. 16-1217, 2016 WL 10592245 (6th Cir. Nov. 29, 2016) ("The language of the [12 C.F.R. §§ 1024.35(c) and 1024.36(b)] leaves no ambiguity. If a servicer establishes a QWR mailing address and provides it to a borrower by written notice, 'a borrower must use' the designated address to submit a QWR.") (citing 12 C.F.R. § 1024.35(c)).

It is also undisputed that Defendant's mailings only directed "[n]otices of error or information requests" to go to a specific P.O. Box address. *See* ECF 26-2, at 6. Given that the term QWR is not used in Defendant's mailings, it is entirely reasonable for Plaintiffs to believe that *some* forms of electronic communications might still be deemed a QWR, and unlock RESPA liability, even if though such communications weren't sent to the P.O. Box noted in Defendant's mailings. But to stop the inquiry there would overlook the substance of what Plaintiff submitted, which was, in fact, allegations that either "assert[ed] an error" on the part of Defendant, *see* 12 C.F.R. § 1024.35 (a), or constituted a "request for information from a borrower," *see* 12 C.F.R. § 1024.36 (a). Both messages sent over the online chat service asked for information from the loan servicer about who bore responsibility for the payment of insurance premiums and inquired into

9

"what went wrong?"[4] ECF 22-10, at 1. For these types of QWRs,[5] the regulations clearly provide that Defendant can, and in this case *did*, "establish an address that a borrower *must* use" to register either type of QWR. *See* 12 C.F.R. §§ 1024.35 (b) and 1024.35 (c) (emphasis added). There is no dispute that Plaintiffs failed to send their inquiries to the specific P.O. Box address designated by Plaintiff for QWRs of the kind Plaintiffs submitted.

Moreover, Defendant's mailings are also consistent with the prevailing regulations implementing RESPA. "RESPA's implementing regulations construe the statute as authorizing two types of QWRs: notices of errors under 12 C.F.R. § 1024.35 and requests for information under 12 C.F.R. § 1024.36." *Moral v. PHH Mortg. Corp.*, No. 6:21-CV-01070-HLT-TJJ, 2022 WL 4016583, at *4 (D. Kan. Sept. 2, 2022) (citing *Fowler*, 747 F. App'x at 669). Defendant's plain requirement that mortgagees must send "[n]otices of error or information requests" to a particular address was therefore not overbroad but instead mindful of the exact language used in

---

[4] The applicable regulations establish that a "notice of error" includes a claim that a servicer failed "to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law." 12 C.F.R. § 1024.35(b)(2). It is undisputed that Plaintiffs' electronic communications initially alleged that a past-due notice from their insurer "was supposed to have been paid from [Plaintiffs'] escrow," ECF 22-10, at 2, and then added that Defendant must inquire into "what went wrong," thus alleging error on the part of Defendant under that unambiguous regulation. At minimum, Plaintiffs' electronic communication sought "information relating to the servicing of the mortgage loan" and thus should be treated as" a request for information under 12 C.F.R. § 1024.36(a).

[5] Defendant only challenge how Plaintiffs submitted their correspondence and do not raise an argument that the contents of the electronic communication otherwise failed to satisfy the requirements for a QWR under the definition in 12 U.S.C. § 2605(e)(1)(B). *See* ECF 22-1, at 6 (arguing that "Plaintiffs' communication is not a qualified written request subject to protection under RESPA because it was not sent to the proper designated address.") Thus Defendant appears to concede that the submissions at issue constitute "written correspondence, other than notice on a payment coupon, or other payment medium supplied by the servicer that" included enough information for Defendant "to identify, the name and account of the borrower" and included "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

10

12 C.F.R. §§ 1024.35(c) and 1024.36(b). The Court cannot penalize Defendant for its virtually verbatim use of the relevant regulatory language, which was updated in large part to "benefit consumers" and to avoid confusion that reigned when such correspondence only used the term QWR. *See Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 Fed. Reg. 10696-01, at 10744.

A similar determination was made by the district court for the District of New Hampshire when it was faced with a RESPA challenge to what appears to be the exact language Defendant's mailings used here. *See Moody v. PennyMac Loan Servs., LLC,*. No. 16-CV-00021-JL, 2019 WL 7596261 (D.N.H. Nov. 12, 2019). As here, the *Moody* plaintiff failed to direct his QWR "to PennyMac's designated address, even though PennyMac's monthly mortgage statements from January 2014 forward stated that '[n]otices of error or information requests must be mailed to' PennyMac's Los Angeles, CA address." *Id.* at *2 (citing the language in PennyMac's mailing). The *Moody* plaintiff contended, as Plaintiffs do here, "that, despite these instructions, PennyMac failed to designate an address for receiving QWRs and only described 'where to send everyday notices of error or requests for information,' but not 'specifically . . . where to send QWRs.'" *Id.* at *11 (citing pleadings). Finding this argument "unpersuasive," the *Moody* court observed "that nothing in Regulation X requires lenders to specifically use the term QWR in lieu of more accessible language." *Id.* As such, *Moody* held "that PennyMac's instructions in its post-2013 monthly mortgage statements reasonably sufficed to designate an address for sending qualified written requests." *Id.*

In making this finding, the court in *Moody* cited extensively to the decision of the United States Court of Appeals for the Eleventh Circuit in *Bivens v. Bank of Am., N.A.*, 868 F.3d 915 (11th Cir. 2017). There, the plaintiff/appellant argued that a loan servicer failed to designate an address

11

for receiving QWRs because correspondence from the servicer noted only that "[a]ll written requests must be sent to the address listed below for Disputes/Inquiries, as this is our exclusive address for processing these matters." *Bivens*, 868 F. 3d at 920. The Eleventh Circuit rejected this argument and noted that "[b]y directing borrowers to send *all* written requests to the specified address, [the servicer] necessarily directed them to send 'qualified' written requests to that address." *Id.* at 920 (emphasis in original). The *Bivens* court remarked that the notice at issue "used more accessible language than Regulation X required" and observed that "borrowers likely would be more familiar with the lay terms 'disputes,' 'inquiries,' and 'written requests' than with the statutory term of art, 'qualified written request.'" *Id.* (citing 24 C.F.R. § 3500.21(e)(1)). The court was reluctant to find that a mortgage servicer could violate RESPA by using terms that tended to "minimize consumer confusion" in directing consumers where to file QWRs and related communications. *Id.* In fact, the Eleventh Circuit went so far as to note that the servicer "subjected itself to the administrative burden of evaluating and prioritizing a larger quantity of mail to identify QWRs, perhaps so as to minimize consumer confusion." *Id.* "To penalize it for doing so would be perverse." *Id.* Ultimately, the *Bivens* court found that "[a] servicer's designation of an exclusive address for QWRs must be clear to a reasonable borrower—to say otherwise would frustrate RESPA's consumer-protection purpose." *Id.*

*Bivens* clearly supports Defendant's argument that the mailings at issue were adequate to put Plaintiffs on notice that their QWRs alleging error or seeking information must be sent to a P.O. Box in California or Texas. Nevertheless, there exist some important distinctions between the correspondence from Defendant at issue here and the letter received by the plaintiff in *Bivens*.[6]

---

[6] *Bivens* dealt with a subsection of a previous version of Regulation X, 24 C.F.R. § 3500.21(e)(1), which laid out requirements solely and specifically with respect to QWRs, not the new language employed in the updated regulations that speaks to "notice from the borrower that asserts an error,"

12

The letter in *Bivens* provided the plaintiff "with three separate addresses to use for correspondence — one for General Correspondence, one for Disputes/Inquiries, and one for Payment Remittance." *Bivens*, 868 F. 3d. at 917. Specifically, the letter noted that "[i]f you wish to send a written request about your account or dispute any of the information on this statement, please do not include it with your monthly payment." *Id.* The letter cautioned that "[a]ll written requests must be sent to the address listed below for Disputes/Inquiries, as this is our exclusive address for processing these matters" and further warned that "[i]f you send your request or dispute to any other address, it may not be processed in accordance with our Customer Service Timelines." *Id.*

Here, of course, the notice from the servicer was slightly different. First, it lays out multiple ways to contact the servicer and apparently fails to warn the recipient of the potential consequences of sending a QWR to an address other than the one identified for the sending of an NOE or RFI. Second, it encourages the recipient to use alternative methods to contact the servicer, even going so far as to (loudly) encourage the recipient to "Go Paperless Today!," and directs the recipient to a website with a communication function that Plaintiffs obligingly utilized. Regardless, for the reasons noted in *Moody* and *Bivens*, the Court is persuaded that the challenged notice goes far enough in warning those who receive it that "[n]otices of error or information requests **must** be mailed to [a Los Angles P.O. Box] address." ECF 22-5, at 3 (emphasis in original).

A determination that this provision was sufficiently clear is also consistent with Judge Chuang's thoughtful opinion in *Nash v. PNC Bank, N.A.*, Civ. No. TDC-16-2910, 2017 WL 1424317 (D. Md. Apr. 20, 2017). In addressing a RESPA claim involving correspondence directed

---

12 C.F.R. § 1024.35(a) and "written request for information," 12 C.F.R. § 1024.36 (a). However, "courts have analyzed the updated regulation, 12 C.F.R. § 1024, in the same manner as the previous HUD version, 24 C.F.R. § 3500," and, "[a]s such, recent decisions interpreting RESPA have continued to rely upon caselaw interpreting the older HUD version of Regulation X." *Basora v. JPMorgan Chase Bank*, 202 F. Supp. 3d 1328, 1331 (S.D. Fla. 2016) (collecting cases).

13

to PNC Bank, Judge Chuang highlighted that the "[t]he purported notice of a designated QWR address identified by PNC is the statement in [a] Denial Letter: 'To request information or notify us of an error regarding your account, please send a written request/notice to: PNC Mortgage, P.O. Box 8807, Dayton, OH 45401-8807.'" *Nash*, 2017 WL 1424317, at *7 (citing an exhibit to the complaint in that case). Judge Chuang observed that "[t]his statement did not explicitly identify this address as the designated address for borrowers to send QWRs within the meaning of RESPA" because "[i]t in no way provided notice that a QWR must be sent to this address in order to qualify as a QWR." *Id.* Though he dismissed the RESPA claim on other grounds, Judge Chuang noted that "[b]ecause PNC did not provide notice that all QWRs 'must' be sent to the designated address, the failure to send the Appeal Letter to the Dayton, Ohio address does not disqualify it as a QWR." *Id.* (citing 12 C.F.R. 1024.36(b)). Here, in contrast to the PNC mailing at issue in *Nash*, Defendant's plainly stated that "[n]otices of error or information requests **must** be mailed" to a specific address. ECF 22-5, at 3 (emphasis in original).

The Court cannot conclude that the use of the terms "notices of error" and "information requests" instead of "QWRs" may never have a consequence. Indeed, even the cases cited by Defendant represent situations where correspondence to a plaintiff explicitly directed that QWRs – not NOEs or RFIs – must be sent to a specific address. *See, e.g., Bird v. Bank of New York Mellon Tr. Co., N.A.*, Civ. No. GLR-19-464, 2019 WL 4750289, at *2 (D. Md. Sept. 30, 2019) ("The SLS Notification Letter stated that "qualified written requests" ("QWR") needed to take a particular form and be sent to an address in Littleton, Colorado."); *McClain v. Wells Fargo Bank, N.A.*, Civ. No. 20-2035, 2021 WL 3852322, at *3 (D. Md. Aug. 27, 2021) (reflecting that Plaintiff was informed in a welcome letter "that QWRs must be sent to P.O. Box 630147, Littleton, CO 80163-0147"; *Lupo*, 2016 WL 3459855, at *6 (noting that mortgage servicer sent correspondence

14

to Plaintiff alerting him to his rights under RESPA when it explicitly stated "A [QWR] is a written correspondence which includes you name and account number and your reasons for the request. Writing a note on your payment coupon or envelope is not considered a [QWR]. . . .[QWRs] must be sent to: Attn: Customer Care Support[,] P.O. Box 636005[,] Littleton, CO 80163-6005"). Thus, in the rare circumstance where a recipient of a loan servicer's notice attempts sends QWR that is not an RFI or NOE, the failure to include specific directions explaining where to send "Qualified Written Requests" may yield a different result.

In denying the Defendant's motion to dismiss in the present case, the Court noted that "[a]s a matter of law, I agree with Defendant, the jurists in this District that have addressed the issue, and the Second and Tenth Circuit opinions that when a loan servicer elects to receive QWRs through a particular address and notifies its mortgagors of that address, communications received outside of that address are not QWRs." *Charney*, 2024 WL 2391140, at *6. Having the benefit of full briefing and a fulsome record on summary judgment, the Court finds no dispute of fact that Defendant *did* provide a specific address for the precise type of QWR at issue in this case and Plaintiffs, even if for a good reason, failed to send their QWR to that address. As such, summary judgment is in order as to the RESPA claim.

The Court is not persuaded that the inclusion of the P.O. Box address next to an encouragement to borrowers to "Go Paperless today!" and a description of other contact methods, including a pathway leading to the electronic communication service used by Plaintiffs, could reasonably lead Plaintiffs to believe that a QWR asking a question or asserting an error could be sent to an electronic service *or* to the P.O. Box and still give rise to RESPA liability. While the "How to Contact Us" section on the monthly mortgage statements did provide the contact information for the online chat service in close proximity to the directive explaining where "notices

15

of error or information requests must be mailed," the two sections were distinctly separated. *See, e.g.*, ECF 22-5, at 3. Moreover, it bears repeating that the instruction explicitly stated that "notices of error or information requests **must** be mailed" to the designated address, and the word "must" appeared in bold font. *Id.* Defendant additionally notified Plaintiffs on two separate occasions that it had designated a specific address for receipt of error notices and information requests, first in its January 11, 2021 "welcome letter," *see* ECF 22-4, at 3, and again in its notice of a change to the designated address, *see* ECF 22-7, at 1. These designations were therefore "clear and conspicuous" within the meaning of 12 C.F.R. 1024.32(a)(1).

The Court recognizes that it is often the case that even the most "conspicuous" of notices may still be buried among pages of fine print in an impersonal form letter sent by metered mail that itself may be hidden under stacks of holiday cards, catalogs, and other mailings. Moreover, there is no dispute here that Plaintiffs made efforts to alert Defendant to an apparent failure to pay for Plaintiffs' homeowner's insurance, efforts that were unsuccessful. The failure to pay the insurance turned out to be of great significance after Plaintiffs suffered a tragic fire and experienced the loss of property, not to mention the emotional trauma endured both as a result of that loss and upon the understandably alarming discovery that there was a lapse in their insurance.

Unfortunately for the viability of their RESPA claim, however, Plaintiffs directed their apparently well-grounded complaints to the wrong recipient. As harsh as it may seem in this particular case, the caselaw is clear that "[t]he requirements for servicers to respond to QWRs or notices of error flow from receipt of the correspondence by the servicer at the proper designated address." *Nelson v. Fay Servicing, LLC*, No. 3:22-CV-01911-HZ, 2023 WL 6122685, at \*6 (D. Or. Sept. 15, 2023); *see also Maley v. Specialized Loan Servicing LLC*, Civ. No. 18-13245, 2021 WL 1812698, at \*3 (E.D. Mich. May 6, 2021) ("It is well established that, when a loan servicer

provides an address at which the servicer receives QWRs, debtors must submit their requests to that address in order to trigger RESPA response obligations."). The form and recipient of the communication matters for RESPA liability, even when, as here, a representative of Defendant received the communication despite it being sent to the wrong address. *See Cheetham v. Specialized Loan Servicing LLC*, No. 2:20-CV-762-JCC-DWC, 2021 WL 5205453, at *4 (W.D. Wash. July 19, 2021) ("Accordingly, Defendant is correct that Plaintiffs' email correspondence cannot form the basis of a RESPA violation").

In sum, as review of the mortgage statements and other communications sent from Defendant to Plaintiffs indicates that neither the terminology nor the placement of Defendant's notice of a designated address were unclear or inconspicuous, the Court finds that Defendant properly established a designated address for receipt of QWRs, more specifically the precise type of QWRs at issue in this case. Plaintiffs do not contest that they sent their correspondence to an address other than the one Defendant designated for the receipt of this type of QWR. Defendant is therefore entitled to summary judgment on Plaintiffs' RESPA claim as a matter of law.

**B.   A ruling on the motion for partial summary judgment is not premature**

Plaintiffs allege that scheduled depositions of Defendant's corporate representatives may reveal whether their online communication "was received by the same department that manages, receives, and/or processes QWRs at the physical address" and therefore summary judgment at this stage "is not warranted." ECF 26-2, at 8–9. The Court disagrees. As a threshold matter, this representation was made in July of 2024. *See* ECF 26-2, at 8 (noting on July 31, 2024 that the depositions at issue "were scheduled"). A subsequent status report submitted jointly by the parties noted that the depositions ultimately did, in fact, occur. *See* ECF 28, at 1 (stating that "the depositions of PennyMac's Corporate Representative and Plaintiffs have occurred"). No request

to supplement the briefing related to the pending motion for partial summary judgment was filed by either party after the depositions occurred. Thus, the Court concludes that even if summary judgment was premature at the time the motion was filed, ample time has passed after the motion's filing to seek leave to supplement the briefing, discovery has now closed, and a ruling on the motion is not premature.

Regardless, if a servicer has complied with the requirements for designating an address for receipt of QWRs, "a letter sent to a different address is not a QWR, even if an employee at that address (who may not have training in RESPA compliance) in fact responds to that letter." *Lupo*, 2016 WL 3459855, at *5 (quoting *Roth*, 756 F.3d at 181). Other federal courts have concluded that even where a mortgage servicer received actual notice of a QWR, which appears to be the case here, it is "not obligated to respond to QWRs sent to an address other than the designated QWR address." *Best*, 2016 WL 10592245, at *2 (citing *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013) and *Roth*, 756 F.3d at 181–82). As Plaintiffs do not dispute that they did, in fact, direct their QWRs to an address other than the one designated by Defendant, subsequent discovery addressing whether Defendant received actual notice does not alter the relevant RESPA inquiry. As such, a decision on the motion for partial summary judgment is not premature.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment as to Count III of Plaintiffs' complaint is GRANTED. Plaintiffs' breach of contract claim based in state law remains. However, the Court intends to retain jurisdiction over the breach of contract claim. As the Fourth Circuit has explained, district courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see also Carlsbad Tech., Inc. v. HIF Bio*,

*Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary"). In deciding whether and when to retain jurisdiction over state claims, district courts may consider factors such as "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110.

After considering the *Shanaghan* factors, the Court will retain jurisdiction over Plaintiffs' breach of contract claim on the grounds of judicial economy as well as convenience and fairness to the parties. This case has been pending before the Court since October 2023 – nearly a year and a half – and the parties have already engaged in discovery. Moreover, the parties have been engaged in settlement proceedings since October of 2024, *see* ECF 34, and are scheduled to again mediate this case, this time before a United States Magistrate Judge, in just a few days, *see* ECF 31. At this stage in the case, the Court is familiar with both the factual background and procedural posture of the action and sees no reason to disrupt the course of the litigation when it is well-positioned to continue presiding over it.[7]

A separate implementing Order will issue.

Dated: January 8, 2025

/s/
Brendan A. Hurson
United States District Judge

---

[7] The Court is, however, mindful of the fact that Plaintiffs initially filed this matter in state court and thus did not choose this forum for litigation of their claims. *See Hall v. Greystar Mgmt. Servs., L.P.*, 179 F. Supp. 3d 534, 537 (D. Md. 2016) (including as a factor in the decision to retain jurisdiction over state law claims the fact that the "case did not come before it on removal jurisdiction: on the contrary, it was Plaintiff who elected to file her Complaint in federal court"). As such, in the hopefully unlikely event that the mediation scheduled for January 15, 2025 is unsuccessful, the Court will consider a motion to remand if it is filed promptly.

19